Subsequent to the Order, the cases were heard before Deputy Commissioner John A. Hedrick in Hendersonville, North Carolina on April 27, 1999. Additional medical depositions have been taken and submitted to the Full Commission. This matter is now ready for decision.
The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner, with some modification. The Full Commission, in their discretion, have determined that there are no good grounds in this case to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties hereto are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. The employment relationship existed between plaintiff-employee and defendant-employers at all relevant times.
3. Ralph Wilson Plastics/Premark International is insured for workers compensation coverage by Aetna Life Casualty Company (Travelers).
4. On August 16, 1988 Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-Ralph Wilson Plastics which was the subject of a Form 21 agreement approved by the Industrial Commission on December 6, 1988.
5. A Form 26 agreement for additional temporary total disability for necessary weeks was approved by the Commission on May 25, 1989.
6. Another Form 26 agreement providing plaintiff payment for a twenty-five percent permanent impairment rating to her back as of June 30, 1994, was submitted to the Commission and approved by the Commission on September 20, 1996.
7. As set forth in the Form 21 and subsequent Form 26 agreements, plaintiff had an average weekly wage of $429.71 and a compensation rate of $286.47.
8. The following items of correspondence contained in the Commissions file were received as evidence:
a. Letter of July 5, 1995 to Pat Benton from Mark Weaver with Aetna.
b. Letter of July 26, 1995 to Pat Benton from Gary Dodd.
c. Letter of November 13, 1995 to Mark Weaver from Gary Dodd.
d. Letter of November 13, 1995 to the Industrial Commission "To Whom It May Concern from Gary Dodd.
e. Letter of March 5, 1996 to Pat Benton from Mark Weaver.
f. Letter of May 14, 1996 to Phillip Hopkins from Gary Dodd.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff was born on November 27, 1961, and she is a high school graduate.
2. On August 16, 1988, plaintiff was employed by Ralph Wilson Plastics Company. On August 16, 1988, plaintiff picked up a large roll of paper and was attempting to place the paper in a bailer when she felt pain in her back. She reported her injury to her supervisor.
3. As a result of the accident of August 16, 1988, plaintiff injured her lower back. She was initially seen by Dr. Mullis, who treated her conservatively with physical therapy and traction.
4. Around May, 1989, plaintiff was referred to Dr. Van Blaricom, who later performed three surgeries on her back. On June 13, 1989, Dr. Van Blaricom performed a percutaneous diskectomy at L5-S1. On February 13, 1990, Dr. Van Blaricom performed bilateral foraminotomies and hemilaminectomies at L5-S1. Finally, on May 18, 1993, Dr. Van Blaricom performed bilateral decompressive laminectomies at L5-S1 with a fusion with instrumentation at L5-S1.
5. Following her last surgery, plaintiff was seen in follow-up by Dr. Van Blaricom. By her March 14, 1994 visit, her x-rays showed a solid fusion. Dr. Van Blaricoms opinion was that from a surgical viewpoint, plaintiff had reached maximum medical improvement. He gave her permanent restrictions of a maximum of 23 pounds lifting and carrying, 22 pounds pushing and 25 pounds pulling. He also restricted her overhead work due to shoulder tendinitis. Dr. Van Blaricom rated plaintiff with a twenty-five percent permanent impairment to her back. This rating was the basis for the Form 26 approved by the Commission on September 20, 1996.
6. Plaintiff worked with a rehabilitation counselor, and began working for Bussman Industries as a solderer near the end of July 1994. This job appeared to be consistent with plaintiffs restrictions and was approved by her rehabilitation counselor. In this position, plaintiff used both hands and was able to sit or stand as needed. Plaintiff continued to do this job until sometime in October 1995.
7. In October 1995 plaintiff was moved to a different soldering position. In her new job, she used both her hands and her feet. She had to sit in order to operate foot pedals and had to twist or swivel from side to side. After moving to this job, plaintiff began experiencing increasing back pain.
8. Due to her increasing back pain, plaintiff sought medical treatment. On November 9, 1995, plaintiff was seen by John Jordan, a physicians assistant with Dr. Leslie Cargiles family practice. Dr. Cargile prescribed some pain medicines, and plaintiff was advised to return in a week and a half or sooner, if needed. Dr. Cargile also took her out of work. Plaintiff did not return to work at Bussman.
9. Plaintiff returned to Dr. Cargile on November 16, 1995. At that time she requested a referral to a neurosurgeon since Dr. Van Blaricom was no longer practicing. Dr. Cargile referred plaintiff to Dr. Lary Schulhof.
10. Plaintiff was first seen by Dr. Lary Schulhof on December 27, 1995. Plaintiff gave a long history of back problems. She reported to Dr. Schulhof that recently she was developing spasmodic pain while doing work that required repetitive twisting from a sitting position. She advised that her work also required use of both her arms and legs, and that by the end of her shift she would be in terrible pain.
11. Dr. Schulhof examined plaintiff and found decreased sensation in the L2-3 distribution on the left in the anterior and middle thigh. Plaintiffs gait was quite antalgic. She had a negative straight leg raising except for back pain and hip pain. Rotational hip joint motion as well caused some back pain. There was some paraspinal and sacroiliac tenderness on the left compared to the right, and plaintiff had a severely limited range of motion of her back. Plaintiffs x-rays revealed that the rods placed as part of her treatment for fusion were intact, and appeared to be in excellent position and that she had a good solid fusion at L5-S1. Dr. Schulhof believed that plaintiffs continuing pain and problems were occurring from the L4-5 level above her fusion. Dr. Schulhof took plaintiff out of work because he felt that her work was aggravating her pain. He also referred her to a physical therapy program at Asheville Rehabilitation Associates to improve her condition.
12. Plaintiff was scheduled to see Dr. Schulhof again on January 17, 1996, but because she did not have any insurance coverage, she did not keep her appointment. After obtaining coverage, plaintiff returned to Dr. Schulhof in June, 1996. She complained of more pain in her lower back. She told Dr. Schulhof that she had been trying to do physical therapy and spine stabilization exercises at home, but she had more pain and was not getting any relief from her exercises at home. After examining plaintiff, Dr. Schulhof sent her for a myelogram. The myelogram indicated a mild central disc protrusion at L4-5.
13. Dr. Schulhof assessed plaintiff with post-laminectomy, post-fusion syndrome. Due to her prior surgeries and the physical demands of her work, additional stress was placed on plaintiffs back at the L4-5 level above the fusion.
14. Plaintiff was seen also by Dr. Mark Moody and Dr. Andrew Rudins, at the Southeastern Spine Center. The focus of their treatment has been plaintiffs lower back pain, as well as a recurrent sacroiliac joint cyst.
15. Dr. Rudins believes that plaintiffs back condition has changed and worsened since she was rated with a twenty-five percent permanent impairment by Dr. Van Blaricom in March, 1994. Plaintiffs back pain, which now appears to be coming from L4-5, is the result of her prior injury and multiple back surgeries, as aggravated by the stresses of her new job assignment which required prolonged sitting and twisting.
16. Plaintiff did not sustain any injury by accident or specific traumatic incident in the course of her employment with Bussman Industries in October or November, 1995. After her assignment to a new job in October, 1995, plaintiff experienced a gradual worsening of her back pain, rather than an isolated specific onset of pain.
17. Fusion surgeries render a patient more susceptible to problems at the level above the fusion. Plaintiffs fusion at L5-S1 caused increased stress at the L4-5 level, and made her more subject to injury at that level. The duties of her job assignment in October, 1995 aggravated her condition. The aggravation did not break the causal connection between the initial injury, surgeries and subsequent problems. Plaintiffs condition has in fact worsened since she was rated in March, 1994, but she has not suffered a new injury.
18. Plaintiff has a significant impairment to her back and her job duties aggravated her condition and made it more painful. As a result of her back pain, plaintiff was unable to perform the duties of her employment with Bussman Industries after November 9, 1995. Plaintiff has been incapable of earning wages in any employment since that time due to her ongoing back pain.
19. On August 18, 1997, when she saw Dr. Rudins, plaintiff complained about a knot on her left lower back. A MRI was done and showed the knot was a cystic mass in the subcutaneous tissues. On her follow-up visit on August 26, Dr. Rudins aspirated the cyst. The cyst reappeared, and was tender and has been aspirated on at least two occasions. The cyst was caused by plaintiffs original injury and subsequent surgeries.
20. Following her last back surgery in 1993, plaintiff participated in physical therapy. During her physical therapy, plaintiff developed some tendinitis in her right shoulder. Dr. Van Blaricom was of the opinion that her tendinitis would not be permanent, and it does not appear to be an ongoing problem.
21. Plaintiff will require ongoing medical treatment and monitoring of her back condition as the same is reasonably necessary for pain management.
22. Plaintiff was previously receiving benefits under an open Form 21 agreement. The date these benefits ceased is not clear; however, these benefits should not have ceased until July, 1994 when plaintiff returned to work.
23. Plaintiff was rated with a twenty-five percent permanent impairment to her back in March, 1994. However, she did not receive benefits for that rating until the Form 26 was approved by Deputy Commissioner Cramer on September 20, 1996.
24. The letter from attorney Gary Dodd notifying the carrier of plaintiffs claim for a change of condition was dated November 13, 1995 and the Commission received a copy on November 16, 1995. This claim was made within the two years allowed by statute.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has suffered a change of condition, more specifically a worsening of her back condition, since she was rated with a twenty-five percent permanent impairment to her back in March, 1994. Plaintiff filed her claim in a timely manner. N.C. Gen. Stat. 97-47.
2. As a result of her worsened back pain and back condition, plaintiff has been and continues to be unable to earn wages in the same or any other employment and has been totally disabled since November 10, 1995. N.C. Gen. Stat. 97-29.
3. Plaintiffs worsened back condition is attributable to her original back injury of August 16, 1988, and subsequent back surgeries. N.C. Gen. Stat. 97-2(6).
4. Defendants-Premark and Travelers are responsible for payment for ongoing medical treatment for plaintiff as the same is reasonably necessary to effect a cure or give relief or lessen any period of disability. N.C. Gen. Stat. 97-2(19), 97-25.
***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants-Premark and Travelers shall pay plaintiff compensation at the rate of $286.47 per week as total disability compensation beginning November 10, 1995 and continuing until further order of the Commission. Such amount as has accrued to date shall be paid in a lump sum, subject to attorneys fees.
2. Defendants-Premark and Travelers shall pay all medical expenses incurred or to be incurred by plaintiff for medical treatment which is or may be reasonably necessary to effect a cure or give relief or lessen any period of disability.
3. A reasonable attorneys fee of twenty-five percent of the compensation awarded plaintiff is approved for her attorney. Twenty-five percent of the benefits accrued and due plaintiff shall be paid directly to her attorney. Thereafter, every fourth check shall be paid to her attorney.
4. Defendants-Premark and Travelers shall pay the costs.
 ORDER
1. Subsequent to the April 27, 1999 hearing, the deposition of Lary A. Schulhof, M.D. was taken on September 9, 1999. Defendants-Premark and Travelers are HEREBY ORDERED to pay an expert witness fee to Dr. Schulhof in the amount of $594.00.
2. Defendants-Premark and Travelers are ORDERED to reimburse Cooper Industries and Bussman for any deposition fees previously paid in this matter.
This the ______ day of December 1999.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/jth